UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>  v.<br><br>KULWANT SINGH SANDHU,<br><br>        Defendant. | No.  2:15-cr-00231-GEB<br><br><br><br>**ORDER** |

Defendant Kulwant Singh Sandhu ("Sandhu") moves for judgment of acquittal, and for a new trial. The United States opposes each motion.

**Motion for Aquittal**

Sandhu argues in his acquittal motion that it should be granted and an order should issue "vacating the [jury] verdict of guilty and entering a judgment of acquittal." Def.'s Mot. for J. of Acquittal 1:27-28, ECF No. 77. Specifically, Sandhu contends "the [trial] evidence has shown that his conduct does not come within the narrow bounds of the charged statute, 47 U.S.C. § 223(a)(1)(D)," id. at 2:6-8, and "[n]o federal law prohibits a person from calling a telephone repeatedly or continuously under the circumstances established in this case:  when his goal is to communicate with a person at the other end," id. at 2:18-21.

The United States counters the acquittal motion contending "[Sandhu's] charged conduct falls squarely within the

statute, the First Amendment does not absolve [his] culpable intent, and the evidence at trial was more than sufficient to convict [him] on both counts." Gov't.'s Opp'n to J. of Acquittal Mot. 1:22-25, ECF 85.  The United States further argues:

> Count One of the indictment charged the defendant with harassing Joseph Ozag, of the Financial Industries Regulatory Authority, between February 3, 2014, and September 14, 2015.  Count Two charged him with harassing SEC employees, between December 31, 2015, and November 19, 2015.
>
> At trial, the government presented evidence, relevant to both counts, that the defendant called his victims multiple times a day, called repeatedly if his calls went unanswered or the answering party hung up, and often called on multiple days in a row. Call records established that, during the relevant periods, he called Mr. Ozag over 300 times—139 times in March 2014 alone—and called the SEC nearly 3,000 times.  If he managed to speak to a person, he subjected them to insults, profanity, and sexually aggressive language.  If no one answered, he left similarly offensive voicemails.  He told his victims they, or their colleagues, were guilty of unspecified crimes and deserved to be "hanged in a public square," "burned alive," and have their families locked up in Guantanamo Bay.
>
> . . .
>
> Even if the defendant's profane tirades were intended to prompt political change—a position belied by the evidence—the First Amendment is not an absolute defense to the government's charge under Subsection (D). . . . [Sandhu] is still guilty if he harbors an intent to harass, even if he possesses some other intent as well, because Subsection (D) does not require that harassment be his sole intent. . . .
>
> The defendant's argument that his abusive conduct was part of a legitimate, if perhaps misguided, attempt to engage in political discourse, is ultimately contradicted by his abusing those without any authority.  Witness testimony and voicemails

>record that he trained his profanity, violent language, and sexually graphic insults just as readily at such people:  Jamilah Brown, who told him over a period of years that she could not help him and asked him to stop calling multiple times; Mary Head, who told him her job related to investor education, not enforcement, and yet he continued to harass her; and Robert Khuzami, who the defendant continued to call, at his new job, long after he left the SEC, warning Mr. Khuzami that the defendant was "tracking" him and "would not stop."  He used the same profanity and violent language from one victim to the next.  He had no agenda but to provoke an adverse emotional reaction.
>
>At some point, common sense must prevail, and the defendant's campaign to harass can no longer be disguised as something justifiable.  And as much as the defendant wants to cast his harassment as an "attempt to communicate" or petition, his common practice of addressing women as "you f--king bitch" whenever one answered the phone, before launching into his next tirade, undermines this position.  His intent was to provoke adverse emotional reactions in his victims and the evidence directed the jury to that one inevitable conclusion.

Id. at 2:5-16, 5:21-25, 6:15-17, 7:1-13 (citations and footnotes omitted).

The United States is correct in its statements about evidence in the trial record that supports the verdict.  Further, the expressive aspects of Sandhu's words in the evidentiary record support the jury drawing the reasonable inference that in making "the telephones of another repeatedly or continuously to ring," Sandhu intended the sound of ringing produced to harass "any person at the telephone number called."   47 U.S.C. § 223(a)(1)(D).

Sandhu summarizes the arguments in his acquittal motion in his Reply brief as follows:  "The government offered the jury

3

no evidence to support a finding that Mr. Sandhu intended to harass anybody at SEC or FINRA by causing a telephone to repeatedly ring"; and rather than prosecuting these crimes "the government chose instead to prove something else──that Mr. Sandhu made repeated telephone calls with intent to verbally harass[; and, b]ecause no evidence supports a finding that Mr. Sandhu committed the crime[s] the government charged him with committing, the Court should grant his motion for judgment of acquittal."  Def.'s Reply 14:3-11, ECF No. 89.

In determining whether a motion for a judgment of acquittal should be granted, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>United States v. Mosley</u>, 465 F.3d 412, 415 (9th Cir. 2006) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)).  The trial evidentiary record contains evidence that Sandhu harassed persons at the telephones numbers he called by the sound of telephones ringing.  Therefore, Sandhu's acquittal motion is denied.

**Motion for New Trial**

Sandhu argues he is entitled to a new trial because "the jury was permitted to convict Mr. Sandhu on a legally unsound and unconstitutional basis tainted by prosecutorial misconduct[, and t]he absence of adequate jury instructions." Mot. for New Trial 2:5-8, ECF 76.

Sandhu argues the Court errored when it "declined to

give [his] four theory-of-the-case instructions," contending: "The first two explained that the statute proscribes harassment by ringing a telephone, not harassment by talking. The second two concerned the constitutional limits of criminal liability under the First Amendment." Id. at 2:20-25. Sandhu also argues the instructions did not focus on whether his purpose for calling was "only to rant, not caring about whether the ringing caused an adverse emotional reaction" in the persons at the telephone numbers called. Id. at 10:4-5.

The United States opposes the motion, arguing Sandhu's

> [i]nstructions 1 and 2 required the government to prove that the defendant had the intent to harass specifically, and only, by causing his victims' telephones to ring repeatedly; the defense sought these instructions to "highlight" the defense. The government objected on the grounds that the Court's instructions, even without the defendant's proposed instructions, fairly and accurately summarized the elements and allowed the defense to argue its theories of intent. . . .
>
> . . . [And i]nstructions 3 and 4 stated that the jury "must" find the defendant not guilty if they found that he possessed an intent to engage in protected speech, or petition the government, based on his First Amendment rights. The government responded that the conduct at issue was not the speech itself but the repeated ringing of the victims' phones; speech in this case was further evidence of intent. The government explained that the Court's substantive jury instruction made clear the government's burden to prove the defendant's intent to harass and that the Court's instruction allowed the defendant to argue that the government failed to meet its burden or that his intent was to speak or petition to the exclusion of an intent to harass.

Gov't.'s Opp to New Trial Mot. 2:17-24, ECF No. 84 (citations omitted).

5

Sandhu's arguments are not supported by the record. Further, the instructions given charged that Sandhu violated 47 U.S.C. § 223(a)(1)(D) by causing the telephone or telephones of another person to ring repeatedly and that Sandhu "did so" with a specific purpose of provoking an adverse emotional reaction in any person at the telephone number called. The instructions concerned harassing the called persons by the ringing sound of telephones.

The Court need not "give a separate instruction on [a defendant's] theory where 'other instructions, in their entirety, adequately cover that defense theory.'" United States v. Thomas, 612 F.3d 1107, 1120 (9th Cir. 2010) (citing United States v. Mason, 902 F.2d 1434, 1438 (9th Cir. 1990), overruled on other grounds by Dixon v. United States, 548 U.S. 1 (2006)).

Sandhu's arguments concerning the First Amendment are similarly not supported by the law. A First Amendment instruction is required when there is "some evidence . . . that the purpose of the speaker or the tendency of his words are directed to ideas or consequences" only when the words expressed constitute the criminal conduct charged. United States v. Freeman, 761 F.2d 549, 551 (9th Cir. 1985) (addressing "fourteen counts of aiding and abetting and counseling violations of the tax laws"). "[I]t has never been deemed an abridgement of freedom of speech . . . [for Congress] to make a course of conduct illegal merely because the conduct [could] in part [be] . . . evidenced by means of language . . . ." Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 502 (1949). Because 47 U.S.C. § 223(a)(1)(D) only prohibits harassment by causing the

telephones of another to ring repeatedly, no First Amendment instruction was necessary. Therefore, Sandhu's motion for a new trial based on the sufficiency of the jury instructions is denied.

Sandhu also argues his convictions should be reversed because of prosecutorial misconduct during closing argument. Specifically, Sandhu argues:

> After assuring the Court and the defense that Mr. Sandhu could legitimately argue the First Amendment to the jury, the government's statements in rebuttal rise to the level of prosecutorial misconduct. That is, government counsel told the jury to disregard accurate statements of law that it conceded were relevant to Mr. Sandhu's defense. . . .
>
> This misconduct violated Mr. Sandhu's Fifth Amendment right to due process of law, because it precluded the jury from considering a valid defense.

Mot. for New Trial 9:26–10:15 (citations omitted).

The government counters:

> The defendant's counsel's misconduct allegation rests on an inaccurate recollection of the record. The government did not "concede" that any of the defenses contained in the proposed Defense Instructions were proper statements of the law. At no time did it concede the positions that the charging statute criminalized harassment solely by the repeated ringing of a telephone and that the First Amendment provided an absolute defense to the defendant's criminal conduct—in fact, it disputed them.
>
> . . . Similarly, the government has never agreed that the defendant's proposed absolute First Amendment defense was valid or a proper statement of the law. Instead, at the charge conference the government told the Court that the instructions, as proposed by the Court, did not preclude the defendant from arguing that the government failed to meet its burden to prove the defendant's

7

>                intent to harass.
>
>        The defendant premised his argument on concessions that were never made.

Gov. Opp. New Trial Mot. 12:16-13:5 (citations omitted).

Sandhu's prosecutorial misconduct arguments are not supported by the record. At the referenced jury instruction conference the prosecutor stated:

>        Here [Sandhu's] speech is being used to show intent. . .
>
>        . . . [I]n considering the substantive instruction that the court intends to give, the government clearly has to prove beyond a reasonable doubt that the caller[ (]that the defendant[)] had intent to harass. There is nothing about the instructions that as given that precludes the defense from arguing that the government failed to meet its burden to show that the defendant had an intent to harass.
>
>        It can argue its case fully as to petitioning or speech, and still argue that under the instructions as provided, which fairly and accurately characterize the elements of the offense. And there is no need for an unduly argumentative instruction that essentially directs a verdict for the defense on a very narrow reading of the evidence.
>
>        I think, rather, the court's instruction basically puts intent at issue among the parties. And the defense is free to argue and is unrestricted in arguing that the government hasn't met its burden.

Id., Ex. 1 44:2-21, ECF No. 84-1.

Sandhu disagrees, arguing the government engaged in prosecutorial misconduct "by inviting defense counsel [during the jury instruction conference] to argue Mr. Sandhu's defenses and then telling the jury to ignore them." Def.'s Reply 10:27-11:2. Specifically, Sandhu argues:

> At the conference on instructions the government argued that no further clarification of instructions was needed. It then said, unequivocally, that Mr. Sandhu could argue all his defenses to the jury.
>
> The government then took advantage of the ambiguity by focusing almost exclusively on the content of Mr. Sandhu's speech as the aspect of his conduct that caused an "adverse emotional reaction." That misdirection by federal prosecutors does not comport with fairness.
>
> Even worse, the government set a trap for defense counsel by inviting her to argue defenses knowing no instructions would be read, then telling the jury to ignore them. At the jury instruction conference, the government asked the Court not to give the proposed First Amendment instructions but expressly conceded that the defense could "argue its case fully as to petitioning or speech, and still argue that under the instructions as provided . . . ."

Id. at 11:10-22 (ellipsis in original) (citations omitted).

The record does not support Sandhu's prosecutorial miscount allegations.

In light of the rulings on the motions, the March 10, 2017, hearing on the motions is vacated.

Dated: March 8, 2017

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge