UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:15-cr-00231-GEB-1 |
|---|---|
| Plaintiff, | |
| v. | **RULING ON REMAINING OBJECTIONS TO PRESENTENCE REPORT EXCEPT FOR DEFENDANT'S DOWNWARD DEPARTURE OBJECTION UNDER U.S.S.G. § 5K2.13** |
| KULWANT SINGH SANDHU, | |
| Defendant. | |

Defendant Kulwant Singh Sandhu ("Defendant") disputes the following sentencing findings in the Presentence Report ("PSR"): he argues he should receive a two offense level reduction for acceptance of responsibility; he should not receive a four level offense level enhancement in connection with his conviction of Count 1 in the Indictment, based on the substantial disruption to the Financial Industry Regulatory Authority, Inc. ("FINRA"); and he should not receive a four level offense level enhancement in connection with his conviction of Count 2 in the Indictment, based on the substantial disruption to the United States Securities and Exchange Commission (the "SEC").

**Objections to Paragraphs 29 and 35 of the PSR: Obstruction of Justice Enhancements**

Defendant objects to Paragraphs 29 and 35 in the PSR, where his offense level is enhanced for obstruction of justice by two levels in connection with Count 1 in the Indictment, and by two levels in connection with Count 2 in the Indictment. Defendant argues these enhancements concern an individual known

1

as "B.M. Patel" or "Patel" in the PSR, and that Defendant's "interactions with Patel are [not] related to [Defendant's] offense" because Patel was not a witness and the brokerage account linking Patel to Defendant was not related to the investigation or prosecution; and in the alternative, even if Patel was a potential witness, Defendant's "text messages [to Patel on which the enhancement is based] still do not show obstruction, because they do not show that [Defendant] intended to stop Patel from speaking truthfully to the FBI [and do] not comprise an attempt at 'unlawfully influencing' Patel," but rather, . . . were intended to "inform [Patel], truthfully, that speaking with the FBI would not help Patel replenish his brokerage account [because Defendant] still believed he could help earn [Patel's] money back." Def.'s Obj. to PSR ("Def.'s Obj.") 12:22-23, 13:2-4, 6, 11-12, 15, ECF No. 97. The text messages indicate Defendant was involved with Patel's loss of money from that account.

Under U.S.S.G. § 3C1.1, the offense level is increased by two levels if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation [or] prosecution . . . of the instant offense of conviction" and the "obstructive conduct [is] related to . . . the defendant's offense of conviction and any relevant conduct . . . ." U.S.S.G. § 3C1.1. "There is no requirement under section 3C1.1 'that the obstructive conduct relate *substantively* to the offense of which the defendant is convicted,' so long as the conduct relates to the investigation, prosecution or sentencing of the underlying federal offense."

United States v. Taylor, 749 F.3d 842, 846 (9th Cir. 2014) (emphasis in original, citation omitted)("[T]he phrase "prosecution of ... the instant offense of conviction" in section 3C1.1 is not limited to the adjudication on the merits of the underlying criminal charges; it also encompasses certain proceedings and procedures collateral to that adjudication.").

The advisory guideline application note for this enhancement includes examples of "threatening, intimidating, or otherwise unlawfully influenc[ing] a . . . witness, . . . directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1, cmt. n.4(A); United States v. Rising Sun, 522 F.3d 989, 996 (9th Cir. 2008) ("Application notes . . . are treated as authoritative interpretations of the Sentencing Guidelines, unless they violate the Constitution or a federal statute or are inconsistent with, or a plainly erroneous reading of, the Guideline they are meant to interpret."); United States v. Kilbride, 584 F. 3d 1240, 1241-42 (9th Cir. 2009) (stating that defendant's filing of a lawsuit days before the witness was scheduled to testify against him constituted "an attempt to threaten or intimidate [the witness] into not testifying at his trial and, therefore, warranted application of an obstruction of justice enhancement.").

The record reflects that Defendant attempted to dissuade Patel from cooperating with the FBI's investigation of his crime and from being a witness at his trial by incessantly contacting Patel through telephone calls, voicemails, and text messages two days after the United States filed its opposition to Defendant's motion to dismiss the current case to which the

United States attached Patel's FBI interview concerning Defendant's offenses. In less than one month after the Patel's FBI interview was filed as an attachment, Defendant tried contacting Patel through 5 missed calls and over 200 messages via the "WhatsApp" messaging service. Pl.'s Opp'n to Def.'s Obj. to PSR ("Pl.'s Opp'n"), Ex. K, 37, ECF No. 100-1. In those messages, Defendant sent Patel:

> [A] copy of the indictment and [Defendant's] own motion to dismiss via WhatsApp messaging service. (See Gov. Ex. M.) He also sent [Patel] a series of messages stating: . . . Dr.Sahib I am.only the one who will get the problem fixed . . . Do not damage my case as it is not benefit you at all . . . I have to sue DOJ & FBI also to get our money .We have to meet too . . . I will.never stop you ,whatever you this if Right but we must meet once . . . Netfliz fraud is too deep in which FraudDirector of FBI will be implicated along with Fraud Attorney General . . . Fraud FBI us not going to get you any money. Crooks are trying to use to protect themselves . . . Using you to protect themselves (See Gov. Ex. N.) . . . Dr Sahib today was my hearing. Need to talk to you, so you know fraud Agenda of Corrupt,treasonous Govt. (See Gov. Ex. O.).

Pl.'s Opp'n 8:10-23. The text messages that Defendant sent Patel indicate that Defendant was aware that Patel was talking to the FBI about Defendant. It is clear from the timing of when the messages started, the volume of the contacts, and the content of the messages that Defendant was attempting to dissuade Patel from aiding the FBI in its investigation of Defendant and from being a potential witness in the United States' prosecution of Defendant. Therefore, Defendant's offense level is enhanced, for obstruction of justice under to U.S.S.G. §3C1.1, two levels on Count 1 and Count 2 of the Indictment.

4

**Objection to Paragraph 42 of the PSR: Acceptance of Responsibility Reduction**

Defendant argues he is entitled to the acceptance of responsibility two-level reduction in his offense level because he has "always admitted his conduct . . . in FBI interviews [and] conceded in opening statement [during the jury trial] that he did not dispute the facts or the evidence, just the conclusions to be drawn from them." Def.'s Obj. to PSR ("Def.'s Obj.") 14:2-5, ECF No. 97. This opening statement and Defendant's defense at the jury trail contested the facts underlying the charged conduct and the reasonable inference that will be drawn from these facts. Defendant denied the two counts in the Indictment charges that he violated 47 U.S.C. § 223(a)(1)(D); specifically, that he caused the telephone of persons to ring repeatedly or continuously and that he intended the sound of the ringing telephones to provoke adverse emotional reactions in persons called.

A defendant is entitled to a two-level reduction in his offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). A defendant, who exercises his right to trial and is convicted, is not automatically precluded from receiving an acceptance of responsibility adjustment. U.S.S.G. § 3E1.1, cmt. n.2. However, it is "incompatible with acceptance of responsibility" to admit criminal conduct while denying intent by contending something other than the charged offense was intended. United States v. Doe, 778 F.3d 814, 826-27 (9th Cir. 2015) (holding that the

district court properly found that the record did not support Doe's assertions that he showed remorse by admitting criminal conduct, while maintaining lack of intent by claiming the conduct was for the purpose of gaining information to share with the FBI); see also, United States v. Burrows, 36 F.3d 875, 883 (9th Circuit 1994) (holding that "defendant's continued insistence that he was working for the government showed that he 'placed responsibility on others and accepted none himself.'").

Defendant's defense at trial was that he did not intend the sound of ringing telephones to provoke adverse emotional reactions in the persons called; rather, he only made telephones ring because he wanted to the person called to pick up the telephone receiver so he could then speak to that person. It is clear that Defendant has not accepted responsibility for his felonious conduct, since he forced the United States to prove his factual guilt at trial. U.S.S.G. § 3E1.1 cmt. n.2. ("This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.") Therefore, Defendant is not entitled to a reduction in his offense level for acceptance of responsibility.

**Objection to Paragraph 26 of the PSR: Enhancement for Substantial Disruption to FINRA Victim**

Defendant objects to the four level enhancement of his offense level in Count 1 of the Indictment for substantial disruption to business functions of the FINRA employee victim (known as "Victim 1" in the PSR) because Defendant's "nonsensical

messages" and "frequent annoying voicemails to one employee never caused a 'disruption' of FINRA's business, much less a 'substantial' one [because] FINRA [has] 'several thousand employees'" and "these massive operations . . . involve[d] over a hundred thousand separate offices." Def.'s Obj. 10:15-17, 10:26-11:1.

Under U.S.S.G. § 2A6.1(b)(4)(A), "[i]f the offense resulted in . . . substantial disruption of . . . business functions or services . . . increase by 4 levels." Courts of Appeals have used the plain meaning of the words to define "substantial disruption" by defining "substantial" as "of ample or considerable account, quantity, size, etc.," and "disrupt" as "to cause disorder or turmoil in." United States v. Anwar, 741 F.3d 1134, 1137-38 (10th Cir. 2013); United States v. Dudley, 463 F.3d 1221, 1226 (11th Cir. 2006)(holding that an anthrax threat closing half of the courthouse for two hours, interrupting the recipient judge's work for many hours, and requiring law enforcement surveillance for 24-hours amounted to substantial disruption).

The trial record evinces that since 2010 Defendant telephoned FINRA offices on numerous occasions, and also sent facsimiles, and electronic mail ("email") communications to multiple FINRA offices in multiple parts of the country. During the 2014/2015 time period, Defendant made the following contacts with Victim 1: "dozens, if not hundreds" of telephone calls to Victim 1's direct telephone line, Trial Transcript, January 17, 2017 ("Tr. Trans. Day 1"), 69:7-9 ECF No. 87; left "dozens, if not hundreds" of voicemails to Victim 1's direct telephone line,

7

Tr. Trans. Day 1 68:18, 68:25-69:2; rang Victim 1's direct telephone sometimes ten to fifteen times in one day, Tr. Trans. Day 1 66:5-7; sent emails that were so large that they required restarting his computer in order for the computer to work again, Tr. Trans. Day 1 97:8-11; that Victim 1 could not turn his telephone off, Tr. Trans. Day 1 66:8-11; that Victim 1 spoke directly to Defendant for long periods of time on roughly seven dozen occasions since 2010, Tr. Trans. Day 1 60:16-19; and that in the telephone calls and voicemails Defendant used profanity-laden tirades with calls for violence to Victim 1, FINRA employees, and FINRA offices. Tr. Trans. Day 1 61:23-62:6, 67:3-25, 68:8-14. Victim 1 also testified that he spoke to Defendant to try to ascertain the message, to try to de-escalate the situation, and to try to prevent violence by giving the defendant an outlet. Tr. Trans. Day 1 66:22-67:25, 68:8-14.

There is "ample evidence" in the record supporting an enhancement for Defendant's substantial disruption to FINRA business, particularly to Victim 1, by the volume and content of Defendant's telephone calls, voicemails, facsimiles, and emails. Therefore, pursuant to U.S.S.G. § 2A6.1(b)(4)(A), Defendant's offense level in Count 1 is enhanced by four levels for the substantial disruption.

**Objection to Paragraph 32 of the PSR: Enhancement for Substantial Disruption to the SEC Enhancement**

Defendant objects to the four level enhancement of his offense level for substantial disruption to the SEC in connection with Count 2 in the Indictment because "the government cannot show that [Defendant's] unanswered and unreturned [telephone]

calls . . . caused a disruption, much less a 'substantial' one." Def.'s Obj. 11:7-8, 11:19.

Under U.S.S.G. § 2A6.1(b)(4)(A), "[i]f the offense resulted in . . . substantial disruption of public, governmental, or business functions or services . . . increase by 4 levels."

The trial record evinces the following contacts Defendant made with SEC employees since 2011: in a one year period, Defendant caused the telephones of SEC employees to ring approximately 3,400 times, PSR 11; called repeatedly in one day and over consecutive days, Tr. Trans. Day 2 38:25-39:1, 61:15-21, 158:8-9; sometimes called between two to three times per day and left between four and six voicemails per day, Trial Transcript Day 2 ("Tr. Trans. Day 2") 139:7-8; called from different telephone numbers or "unknown" telephone numbers, Tr. Trans. Day 2 39:12-16, 139:14; and used abusive, violent and sexually graphic language on telephone calls and in voicemails. Tr. Trans. Day 2 77:10-78:15, 137:9-138:8, 141:15-25. Several SEC employees testified to the disruptive nature of the telephone calls, including the need to walk out of the office when Defendant was ringing her telephone which impeded her use of the telephone and now employees do not answer the telephone unless the incoming telephone number is recognized because time spent on the Defendant's calls was time not spent on routine duties and responsibilities. Tr. Trans. Day 2 155:23-156:6. Defendant's behavior caused, in large part, the SEC's creation of the THAIC line, or telephone line to handle threatening, harassing, abusive, and intimidating callers. Tr. Trans. Day 1 39:4-40:7. Additionally, since 2011, Defendant contacted the SEC's Office of

Investor Education and Advocacy ("OIEA") over 107,000 times; causing "dramatic effect on workflow and work distribution" that required the OIEA department "to create new systems and procedures for dealing with the defendant so that the staff could deal with the rest of the public." Pl.'s Opp'n, Ex. G, 56, ECF No. 100-1; see also Tr. Trans. Day 2 131:8-9.

The evidence in the record supports an enhancement based on Defendant's substantial disruption to the SEC's governmental functions and services through the volume and content of telephone calls, voicemails, and emails that Defendant made to the SEC. Therefore, pursuant to U.S.S.G. § 2A6.1(b)(4)(A), Defendant's offense level in Count 2 of the Indictment is enhanced by four levels for the substantial disruption.

Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, a copy of this Order shall be appended to any copy of the presentence report made available to the Bureau of Prisons.

Dated: May 12, 2017

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge